1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9           CENTRAL DISTRICT OF CALIFORNIA
10
11  BRALA BEVERLY,                    ) Case No. 8:20-cv-00797-JGB (SP)
                                      )
12              Plaintiff,            )
                                      )
13      v.                            ) **REPORT AND**
                                      ) **RECOMMENDATION OF UNITED**
14                                    ) **STATES MAGISTRATE JUDGE**
    ORANGE COUNTY SHERIFF, et al.     )
15                                    )
                                      )
16              Defendant.            )
                                      )
17  _____  )

18       This Report and Recommendation is submitted to the Honorable Jesus G.

19  Bernal, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636

20  and General Order 05-07 of the United States District Court for the Central District

21  of California.

22                               **I.**

23                        **INTRODUCTION**

24       On April 24, 2020, pro se plaintiff Brala Beverly filed a civil rights

25  complaint in this court under 42 U.S.C. § 1983 ("Complaint").  Plaintiff alleged

26  defendant County of Orange violated her constitutional rights and state law by

27

28

                               1

placing her, a transgender woman, in a men's jail cell.[1]  On August 26, 2020, this court dismissed all of plaintiff's claims with leave to amend, except for the Unruh Act claim which was dismissed with prejudice.

On August 30, 2020, plaintiff, filed a First Amended Complaint ("FAC"). In the FAC, plaintiff again alleges defendant violated her constitutional rights, federal law, and state law by detaining her in an Orange County men's jail, and asserts ten additional claims for a total of fifteen claims.

On September 14, 2020, defendant filed a motion to dismiss for failure to state a claim ("MTD").  Plaintiff filed an opposition on October 4, 2020 ("Opposition").  Defendant filed a reply on October 16, 2020.  On October 20, 2020, plaintiff filed a surreply, titled Declaration in support Opposition to the Motion to Dismiss the First Amended Complaint.  Defendant filed an objection to the surreply the same day.[2]

Reviewing the facts as set forth in the First Amended Complaint and liberally construing the allegations, the court finds plaintiff fails to state any claim against defendant.  As such, it is recommended that defendant's Motion to Dismiss be granted.

**II.**

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

On September 23, 2019, Newport Beach police officers arrested plaintiff, a transgender woman, based on an eight- or nine-year-old arrest warrant for a

---

[1]   In both the Complaint and First Amended Complaint, plaintiff identified the sole named defendant as the Orange County Sheriff in his official capacity.  In response to both, defendant County of Orange has noted it was erroneously sued and served as the Orange County Sheriff.  *See* MTD at 1.

[2]   The court did not grant plaintiff leave to file a response to the Reply.  The court therefore sustains defendant's objection and does not consider the surreply.

misdemeanor.  FAC at 5-6, 11, Ex. A.[3]  Despite defendant's policy of placing females in female prisons, plaintiff was placed in an Orange County men's jail from September 23-25, 2019.  *Id*. at 2-3, 5.  Plaintiff's wrist identification wristband listed her former name, not her legal name.  *Id*. at 6.  Deputies told plaintiff that transgender women did not exist and were no different than gay men.  *Id*. at 5.  Deputies placed plaintiff in the same cell as a man who stabbed his wife.  *Id*.  That man, as well as other detainees, threatened to rape and kill her.  *Id*.  Deputies heard the threats but still forced plaintiff into the cell.  *Id*.  Deputies also would not allow her to see a doctor.  *Id*.  When plaintiff saw a doctor, the doctor repeatedly denied she had a right to identify as a female and laughed at her.  *Id*. at 6.

Plaintiff was forced to use a toilet and shower in front of men.  *Id*. at 7-9.  Plaintiff did not shower during her detention.  *Id*. at 11-12.

The deputies "were maliciously treating" plaintiff "to transgender slurs and random insults."  *Id*. at 10, 16.  Although the initial search was conducted by female officers, male officers performed the subsequent searches.  *Id*. at 11.

In order to be released from jail, plaintiff pled guilty in a sham trial.  *Id*. at 5, 13.  Plaintiff later withdrew her plea and the conviction was reversed.  *Id*. 5, 8, 13.  Plaintiff was not represented at the sham trial but there was a defense counsel who spoke on her behalf.  *Id*. at 13.  The judge did not force defendant to relocate plaintiff.  *Id*.  Plaintiff was sentenced on September 25, 2019.  *See id*., Ex. B.  The charges against plaintiff were dismissed on February 18, 2020.  *See id.*

Based on these allegations, plaintiff asserts fifteen claims:

(1) Section 1983 claim for a state created danger;

(2) Section 1983 claim for a First Amendment violation;

---

[3]  All references to the FAC refer to the page numbers designated by the CM/ECF system.

1       (3) Title IX violation;

2       (4) Section 1983 claim for a Fourteenth Amendment violation;

3       (5) Section 1983 claim for *Monell* liability;

4       (6) Section 1983 claim for an Eighth Amendment violation;

5       (7) Section 1983 claim for a Fourth Amendment violation;

6       (8) Section 1983 claim for a violation of 42 U.S.C. § 15607(b);

7       (9) Section 1983 claim for a Fifth Amendment violation;

8       (10) Violation of California Penal Code § 11410;

9       (11) Violation of California Senate Bill 132;

10      (12) Section 1983 claim for a violation of 34 U.S.C. § 12361;

11      (13) Section 1983 claim for a violation of 34 U.S.C. § 12361;

12      (14) Violation of the California Civil Rights Act of 2005; and

13      (15) Violation of the Bane Act, California Civil Code § 52.1.

14 FAC at 5-19.

## III.

## <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal for failure to state a claim "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (as amended). A court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

1    "When there are well-pleaded factual allegations, a court should assume

2    their veracity and then determine whether they plausibly give rise to an entitlement

3    to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868

4    (2009).  A claim "has facial plausibility when the plaintiff pleads factual content

5    that allows the court to draw the reasonable inference that the defendant is liable

6    for the misconduct alleged." *Id.* at 678.  This plausibility standard does not amount

7    to a probability requirement, "but it asks for more than a sheer possibility that a

8    defendant has acted unlawfully." *Id.*

9    "[T]he tenet that a court must accept as true all of the allegations contained

10   in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

11   elements of a cause of action, supported by mere conclusory statements, do not

12   suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct.

13   1955, 167 L. Ed. 2d 929 (2007)).  The complaint must both "contain sufficient

14   allegations of underlying facts to give fair notice and to enable the opposing party

15   to defend itself effectively . . . [and] must plausibly suggest an entitlement to relief,

16   such that it is not unfair to require the opposing party to be subjected to the

17   expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202,

18   1216 (9th Cir. 2011).

19   On a motion to dismiss, a court may take judicial notice of "matters of

20   public record." *See Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282

21   (9th Cir. 1986), overruled on other grounds, *Astoria Fed. Sav. and Loan Ass'n v.*

22   *Solimino*, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991).  Moreover,

23   "courts routinely take judicial notice of documents filed in other courts . . . to

24   establish the fact of such litigation and related filings." *Kramer v. Time Warner*

25   *Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  But the effect of taking judicial notice of

26   documents filed in other courts is limited.  "On a Rule 12(b)(6) motion to dismiss,

27   when a court takes judicial notice of another court's opinion, it may do so not for

28

the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (internal quotation marks and citation omitted).

Where a plaintiff appears pro se in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  Nonetheless, in giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation and citation omitted).

## IV.

## DISCUSSION

## A.   The First Amended Complaint Exceeds the Scope of Amendment Permitted

Defendant argues the court only granted plaintiff leave to amend the first, third, fourth, and fifth claims of the Complaint and did not grant leave to add additional new claims.  MTD at 12-13.  Recognizing the Complaint arguably encompasses some of the new claims in the FAC, defendant contends plaintiff improperly added eight new claims: (1) claim two – First Amendment violation; (2) claim three – Title IX violation; (3) claim eight – 42 U.S.C. § 15607(b)

violation; (4) claim nine – Fifth Amendment violation; (5) claim ten – Cal. Penal Code § 11410 violation; (6) claim eleven – California Senate Bill 132 violation; (7) claim twelve – 34 U.S.C. § 12361; and (8) claim thirteen – 34 U.S.C. § 12361.[4]  *Id.* at 12.  Defendant further argues claim fourteen should be dismissed because the court dismissed the Unruh claim from the Complaint with prejudice.  *Id*. at 14.

The Federal Rules of Civil Procedure permit a plaintiff to amend a complaint as a matter of right within 21 days after service or 21 days after service of a responding service.  Fed R. Civ. P. 15(a)(1).  In all other cases, a party may amend his or her complaint only with the opposing party's consent or leave of court.  Fed. R. Civ. P. 15(a)(2).

When the court dismissed the Complaint, it granted plaintiff leave to amend the Fourth, Eighth, and Fourteenth Amendment and Bane Act claims, but dismissed the Unruh claim with prejudice.  *See* docket no. 19.  Rather than simply amending the four remaining claims, plaintiff added ten additional claims. Arguably, claims one, four through seven, fourteen and fifteen of the FAC were incorporated – whether enumerated or unenumerated – into plaintiff's arguments in the Complaint.  Nevertheless, even liberally reading the Complaint to include some of the new claims, plaintiff has exceeded the scope of the court's order by adding claims two, three, and eight through thirteen in the FAC, as well as including an Unruh violation claim (claim fourteen).

For this reason alone, claims two, three, and eight through fourteen should be dismissed.  But to the extent the court's dismissal order could be interpreted as allowing for the addition of new claims, claims two, three, and eight through thirteen should still be dismissed, along with all the other claims, for the reasons discussed below.

---

[4]   The MTD contains typographical errors regarding claim numbers.  *See* MTD at 12.

**B.**     **The FAC Fails to Allege a § 1983 Claim Under *Monell***

      Plaintiff raises six claims of constitutional violations – claims one, two, four, six, seven, and nine – as well as a separate claim of *Monell* liability (claim five). FAC at 5-6, 8-10, 13.  Defendant contends plaintiff fails to allege a § 1983 claim against it because she has not alleged municipal liability under *Monell*.  MTD at 13-15.

      As in the Complaint, plaintiff names a single defendant in the FAC, the Orange County Sheriff in his official capacity only.  The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *see also Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Such a suit "is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. at 166.  Thus, the real party in interest here is the County of Orange.  Defendant has recognized this, with the County of Orange filing the motion to dismiss the FAC and noting it was erroneously sued as the Orange County Sheriff in his official capacity.

      A local government entity such as defendant Orange County may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Thus, defendant may not be held liable for the alleged actions of its officers or other employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by

that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *See id.* at 690-91; *accord Redman v. Cty. of San Diego*, 942 F.2d 1435, 1443-44 (9th Cir. 1991).

In order to establish liability, a plaintiff must prove four elements: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quotation marks and citation omitted).

Plaintiff alleges violations of the First (claim two), Fourth (claim seven), Fifth (claim nine), Eighth (claim six), and Fourteenth Amendments (claims one and four) but, as discussed below, plaintiff fails to allege facts stating a claim. Nevertheless, assuming plaintiff's allegations of constitutional violations were sufficient to survive the motion to dismiss, plaintiff's constitutional violations are still subject to dismissal because she fails to plead facts sufficient to establish *Monell* liability.

Plaintiff fails to identify a policy of defendant's that resulted in the alleged constitutional violations. Plaintiff merely alleges defendant has a policy of placing female inmates in female prisons for safety purposes, but such policy does not relate to the housing of transgender women. *See* FAC at 5-10. Reading the FAC liberally, plaintiff may also be arguing that defendant has a policy or custom of rejecting the identity of transgender women. But plaintiff does not state any facts to support her claim that defendant has such a policy or longstanding practice. *See Hunter v Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (a custom or practice may be inferred from evidence of repeated constitutional violations).

Instead, plaintiff's allegations reflect a single instance of placing a transgender woman in a men's jail.  Allegations of one occurrence of an alleged constitutional violation does not equate to a policy or custom.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Accordingly, claims one, two, four, five, six, seven, and nine should be dismissed for failure to state *Monell* liability.

**C.   All the Claims Should Be Dismissed for Failure to State a Claim**

In addition to the reasons cited above, all of the claims in the First Amended Complaint should be dismissed for the following reasons.

**1.   Claim One – "State Created Danger" or Failure to Protect**

In claim one, plaintiff alleges Sheriff's deputies placed her in a dangerous situation by placing her in a men's jail.  FAC at 5.  Plaintiff alleges she was placed in a cell with a man who stabbed his wife and other detainees threatened to rape and kill her.  *Id*.  Although characterized as a "state created danger" claim, plaintiff appears to be arguing that defendant violated her Fourteenth Amendment rights by being deliberately indifferent to the dangerous conditions of her confinement.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (for claims by pretrial detainees pertaining to their conditions of confinement, courts "properly rel[y] on the Due Process Clause rather than the Eighth Amendment . . . .  Due process requires that a pretrial detainee not be punished."); *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989) ("[W]hen the state takes a person into custody and holds [her] there against [her] will, the Constitution imposes upon it a

10

corresponding duty to assume some responsibility for [her] safety and general well-being.").

Under the Fourteenth Amendment, pretrial detainees have a due process right to be free from violence from other inmates. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). As such, corrections officers have a duty to protect prisoners from violence by other detainees. *Id*. The Ninth Circuit has identified the following as elements of a failure to protect claim under the Fourteenth Amendment:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1069 (footnote omitted). A pretrial detainee plaintiff must prove the defendant official had a state of mind similar to reckless disregard – more than negligence but less than subjective intent – to establish the third element in this failure to protect claim. *Id.*

Here, plaintiff may have alleged facts supporting the first three elements of a failure to protect claim (albeit not according to any County policy or custom, and therefore not sufficiently for defendant County of Orange to be liable under *Monell*, as discussed above). But plaintiff has not alleged any facts to show defendant caused plaintiff's injuries because, just as in the original Complaint,

1  plaintiff again has failed to allege facts demonstrating she suffered any harm at all.

2  Although plaintiff alleges she was placed in a cell with a violent person and other

3  detainees threatened her, she does not allege any actual harm or injury as required

4  to state a civil rights claim.  *See, e.g., Corales v. Bennett*, 567 F.3d 554, 564-65

5  (9th Cir. 2009) (mere threats to violate the Constitution are not a violation of the

6  Constitution); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("mere naked

7  threat" of bodily harm does not constitute a "constitutional wrong").  Plaintiff does

8  not allege she was attacked or physically harmed in any manner.  As such, plaintiff

9  fails to state a Fourteenth Amendment violation.

10      **2.    Claim Two – First Amendment**

11      In claim two, plaintiff alleges defendant violated her First Amendment rights

12  by placing her former name, which was the name on the arrest warrant, on her

13  wristband.  FAC at 6.  By using her former name, defendant "renamed" and

14  "regendered" plaintiff.[5]  *Id*.

15      The First Amendment prohibits the government from abridging the freedom

16  of speech.  U.S. Const. amend. I; *Long Beach Area Peace Network v. City of Long*

17  *Beach*, 574 F.3d 1011, 1020-21 (9th Cir. 2009).  To state a First Amendment

18  claim, a plaintiff must allege that government action deterred or chilled plaintiff's

19  speech and such deterrence was a motivating or substantial factor in defendant's

20  conduct.  *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir.

21  1999).  The FAC does not contain any allegations of defendant's employees or

22  agents placing limits on plaintiff's freedom of speech or expression.  The act of

23  using plaintiff's former name on her wristband, which was the name on the arrest

24

25

26  _____

27      [5]   Plaintiff alleges she was renamed and regendered upon arrest.  FAC at 6.
   Plaintiff was arrested by the Newport Beach Police Department, not by the Orange

28  County Sheriff's Department.  *Id.*, Ex. A.

warrant, did not deter or stifle plaintiff's speech.  As such, the FAC fails to state a
First Amendment violation.

### 3.     Claim Three – Title IX

In claim three, plaintiff contends defendant violated Title IX of the
Education Amendments of 1972 ("Title IX") when her gender was ignored and she
was housed in a men's jail.  FAC at 7.

"Title IX prohibits sex discrimination by recipients of federal education
funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S. Ct. 1497,
161 L. Ed. 2d 361 (2005).  The Ninth Circuit has held that "state prisons receiving
federal funds must comply with the regulations applicable to Title IX" in their
prison educational programs.  *Jeldness v. Pearce*, 30 F.3d 1220, 1226 (9th Cir.
1994).

Putting aside the fact plaintiff was a detainee in a jail and not a prison
inmate, plaintiff fails to state a Title IX claim in any event because she has not
alleged discrimination with respect to an education program offered at the jail.

### 4.     Claim Four – Fourteenth Amendment

Plaintiff contends, in claim four, defendant violated her due process and
equal protection rights under the Fourteenth Amendment by using her former name
and treating her differently than other females.  FAC at 8.  Plaintiff further argues
that her due process rights were violated by a sham trial on September 24, 2019.
*Id.*; Opposition at 10.

Under the Equal Protection clause of the Fourteenth Amendment, "all
persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne
Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).  Plaintiff
does not argue that she was treated differently than other transgender women.
Instead, plaintiff contends defendant, by placing her in a men's jail, treated her
differently than cisgender women.  But the Supreme Court has not ruled

transgender women have a constitutional right to be housed in a female cell, and as discussed below with respect to claim eleven, no law then required it.

Plaintiff similarly has not alleged facts stating a procedural due process claim. Plaintiff's claim relies on her legal status as female. But again, the law existing at the time of her detention did not require transgender women to be housed in a women's jail, and plaintiff does not allege facts demonstrating defendant did not follow proper protocol to determine which facility to house plaintiff.

As for plaintiff's claim relating to a "sham trial," she appears to be asserting a procedural due process claim. Plaintiff alleges the sham trial at which she was forced to plead guilty occurred inside the jail on September 24, 2019. FAC at 8; *see* Opposition at 10. While administrative or other disciplinary hearings may occur in a jail, trials on criminal charges are not held in jails, nor would plaintiff be able to plead guilty to a criminal charge in a jail hearing. Plaintiff presents no facts indicating there was a trial while she was detained. *See* FAC at 8, 13; *see also* Opposition at 10. Indeed, the docket from plaintiff's case indicates the only activity in September 2019 was an arraignment on September 25, 2019, the day she was released from jail, and she did not attend it. *See* Defendant's Request for Judicial Notice in Support of MTD ("RJN"), Ex. A.[6]

Accordingly, claim four should be dismissed.

### 5.    Claim Six – Eighth Amendment

In claim six, plaintiff alleges deputies violated her Eighth Amendment rights by placing her in men's jail, allowing her to be subjected to threats of rape and

---

[6]    Courts may "take judicial notice of court filings and other matters of public records." *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006). Pursuant to Rule 201 of the Federal Rules of Evidence, the court takes judicial notice of Exhibit A to the RJN.

14

1  violence, forcing her to use a toilet and shower in front of men (although she states

2  she did not in fact shower), and insulting her.  FAC at 10.

3       As this court has previously informed plaintiff, the Eighth Amendment

4  applies to convicted prisoners, not pretrial detainees.  *See* docket no. 19 at 4-5;

5  *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016)

6  ("Eighth Amendment protections apply only once a prisoner has been convicted of

7  a crime, while pretrial detainees are entitled to the potentially more expansive

8  protections of the Due Process Clause of the Fourteenth Amendment."); *Castro*,

9  833 F.3d at 1067-68 ("Inmates who sue prison officials for injuries suffered while

10  in custody may do so under the Eighth Amendment's Cruel and Unusual

11  Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's

12  Due Process Clause.").  Plaintiff is required to bring such a claim under the

13  Fourteenth Amendment, which she does in claims one and four, as discussed

14  above.  As such, claim six is without merit and should be dismissed.

15       **6.**    **Claim Seven – Fourth Amendment**

16       Plaintiff contends, in claim seven, that her Fourth Amendment rights were

17  violated when male officers searched her in the jail.  FAC at 11.

18       The Fourth Amendment protects the rights of persons, including the

19  incarcerated, against unreasonable searches.  U.S. Const. amend. IV; *Bull v. City &*

20  *Cty. of S.F.*, 595 F.3d 964, 974-75 (9th Cir. 2010).  "The reasonableness of a

21  search is determined by reference to its context."  *Bull*, 595 F.3d at 971.  Cross-

22  gender searches are not categorically prohibited.  While the courts have found that

23  "cross-gender strip searches in the absence of an emergency violate an inmate's

24  right under the Fourth Amendment to be free from unreasonable searches," a cross-

25  gender pat-down search does not.  *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d

26  1135, 1146 (9th Cir. 2011); *Grummett v. Rushen*, 779 F.2d 491, 496 (9th Cir.

27  1985); *Sweet v. Ruiz*, 2020 WL 4919683, at *4 (C.D. Cal. Jul. 20, 2020).

28

1   Here, plaintiff alleges three women searched her upon entry, but men

2   performed the subsequent searches.  FAC at 11.  Plaintiff fails to allege in the FAC

3   what kind of searches were performed, how they were performed, or any other

4   relevant information, although she implies in the Opposition that male deputies

5   performed pat-down searches.  *See* Opposition at 12.  As such, plaintiff fails to

6   state a Fourth Amendment claim.

7   **7.**   **Claim Eight – 34 U.S.C. § 30307**

8   Plaintiff argues defendant failed to comply with the guidelines on how to

9   treat transgender inmates set forth in 42 U.S.C. § 15607(b).  FAC at 12.  The

10   provisions of former § 15607 are now found in 34 U.S.C. § 30307.

11   Section 30307 is a section of the Prison Rape Elimination Act ("PREA").

12   The PREA was enacted to address the problem of rape in prison by creating

13   national standards and applying such standards to federal and state agencies.

14   *Carroll v. Toele*, 2020 WL 3469363, at *8 n.8 (S.D. Cal. June 25, 2020); *Ford v.*

15   *Spinny*, 2018 WL 10408905, at *3 (C.D. Cal. Nov. 29, 2018) ("PREA was enacted

16   to study the problem of prison rape and to provide funding and the expertise to

17   address it.").  It does not create a private right of action.  *See, e.g., Sweet*, 2020 WL

18   4919683, at *4 ("the PREA does not give rise to a privately enforceable cause of

19   action on its own or under Section 1983"); *Olive v. Harrington*, 2016 WL

20   4899177, at *4 (E.D. Cal. Sept. 14, 2016) ("Nothing in the Act suggests that it

21   created a private right of action, enforceable under section 1983.").  Consequently,

22   plaintiff cannot state a claim under § 30307.

23   **8.**   **Claim Nine – Fifth Amendment**

24   In claim nine, plaintiff argues she was forced to be a witness against herself

25   and plead guilty in a sham trial on September 24, 2019.  FAC at 13; Opposition at

26   14.  The docket in plaintiff's underlying state criminal case, of which the court has

27   taken judicial notice, belies plaintiff's allegations.  The docket clearly reflects

28

plaintiff did not have a hearing or trial on September 24, 2019.  RJN, Ex. A.
Instead, there was a second arraignment on September 25, 2019, at which plaintiff
failed to appear and was sentenced to ten days in jail.  *Id*.  Subsequently, on
February 18, 2020, the court dismissed the case.  *Id*.

Admittedly, there is some confusion.  A Notice to Defendant dated February
18, 2020 indicates that on that date the Orange County Superior Court granted
plaintiff's oral motion to withdraw her guilty plea.  FAC, Ex. 2.  There is no
indication in the criminal docket of plaintiff entering a guilty plea, nor does the
docket explain why plaintiff was sentenced to ten days in jail.  *See* RJN, Ex. A.

In any event, plaintiff's claim of a sham trial held within the jail at which she
was allegedly forced to plead guilty is contrary to the court record, unsupported by
any facts alleged, and utterly implausible.  *See Iqbal*, 556 U.S. at 678 (to survive a
motion to dismiss a claim must have "facial plausibility"; "mere conclusory
statements" do not suffice).  As such, the court should dismiss claim nine for
failure to state a claim.

## 9. Claim Ten – California Penal Code § 11410

In claim ten, plaintiff contends defendant failed to protect her from fear and
intimidation caused by individuals in violation of Cal. Penal Code § 11410.  FAC
at 14.  Section 11410 of the California Penal Code contains legislative findings,
declarations, and definitions.  *See* Cal. Penal Code § 11410.  It does not provide for
a civil remedy.  As such, claim ten is without merit.

## 10. Claim Eleven – California Senate Bill 132

With claim eleven, plaintiff alleges defendant violated California Senate Bill
132.  FAC at 15.  After its enactment, Senate Bill 132 was codified as California
Penal Code §§ 2605 and 2606, and became effective January 1, 2021.[7]  Among

---

[7]   California Senate Bill 132 was signed into law on September 29, 2020 and
became effective on January 1, 2021.  *See*

1  other things, it provides for transgender inmates to be housed and searched

2  consistent with their gender identity.  California Senate Bill 132 was not an

3  existing law at the time plaintiff was detained, and therefore defendant cannot be

4  liable for violating it.

5  **11.  <u>Claims Twelve and Thirteen – 34 U.S.C. § 12361</u>**

6  Claims twelve and thirteen are virtually identical claims in which plaintiff

7  argues defendant violated 34 U.S.C. § 12361, the Violence Against Women Act

8  ("VAWA").  *See* FAC at 16-17.  The Supreme Court found the civil remedy

9  provision of VAWA to be unconstitutional.  *U.S. v. Morrison*, 529 U.S. 598, 627,

10  120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000) (affirming the dismissal of the civil

11  claims brought under VAWA's former section).  As such, claims twelve and

12  thirteen should be dismissed.

13  **12.  <u>Claim Fourteen – California Civil Rights Act of 2005</u>**

14  In claim fourteen, plaintiff argues defendant violated the California Civil

15  Rights Act of 2005.  FAC at 18.  The California Civil Rights Act of 2005 amended

16  the Unruh Act to prohibit discrimination based on marital status or sexual

17  orientation.[8]  This court already dismissed plaintiff's Unruh Act claim with

18  prejudice because jails are not business establishments and therefore do not fall

19  within the ambit of the Unruh Act.  *See* docket no. 19; *see also Wilkins-Jones v.*

20  *Cty. of Alameda*, 859 F. Supp. 2d 1039, 1048-49 (N.D. Cal. 2012); *Taormina v.*

21  *Cal. Dep't of Corr.*, 946 F. Supp. 829, 834 (S.D. Cal. 1996).  Accordingly, this

22  claim must be dismissed.

23

24  _____

25  https://www.cdcr.ca.gov/insidecdcr/2020/09/29/governor-newsom-signs-senate-bill-132-to-respect-gender-identity-during-incarceration/.

26

27  [8]  *See* https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=200520060AB

28  1400.

1

### 13.   Claim Fifteen – Bane Act

2   Plaintiff alleges a violation of the Bane Act in claim fifteen.  FAC at 19.

3   Specifically, plaintiff contends the police deprived her of her gender identity in

4   violation of the First Amendment when deputies "slurred her for being

5   transgender," and said she was on meth, she should stay in jail forever, and should

6   "go live" with men threatening to rape and kill her.  *Id.*

7   "The Bane Act civilly protects individuals from conduct aimed at interfering

8   with rights that are secured by federal or state law, where the interference is carried

9   out 'by threats, intimidation or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d

10   1030, 1040 (9th Cir. 2018) (citation omitted).  In order state a claim under the Bane

11   Act a plaintiff must establish: (1) defendant interfered with or attempted to

12   interfere with plaintiff's constitutional or statutory rights by threatening or

13   committing violent acts; (2) plaintiff reasonably believed defendant would commit

14   violence against his or her property if plaintiff exercised that right, or that the

15   defendant injured plaintiff or his/her property to prevent him/her from exercising

16   that right or retaliate against plaintiff for exercising such right; (3) plaintiff was

17   harmed; and (4) defendant's conduct was a substantial factor in causing plaintiff

18   harm.  *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 471, 149 Cal.

19   App. 4th 860, 872 (2007) (citing the Judicial Council of California Civil Jury

20   Instructions).

21   Plaintiff's allegations are once again deficient, just as the court found with

22   respect to her Bane Act claim in the original Complaint.  *See* docket no. 19.

23   Plaintiff fails to allege sufficient facts to establish the required elements.

24   Plaintiff's allegations do not state a First Amendment violation, as discussed above

25   with respect to claim two.  In addition, the allegations do not establish a reasonable

26   belief that defendant County or any of its employees would commit violence, and

27

28

1  plaintiff does not allege she was harmed.  Accordingly, the Bane Act claim should
2  again be dismissed.

3  **D.    No Further Leave to Amend Should Be Granted**

4      The court generally must give a pro se litigant leave to amend her complaint
5  "unless it determines that the pleading could not possibly be cured by the
6  allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
7  banc) (quotation marks and citations omitted).  Thus, before a pro se civil rights
8  complaint may be dismissed, the court must provide the plaintiff with a statement
9  of the complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24.  But where
10 amendment of a pro se litigant's complaint would be futile, denial of leave to
11 amend is appropriate. *See Hills v. Indymac Mortg. Holdings, Inc*., 730 Fed. Appx.
12 513, 514 (9th Cir. 2018).

13     This court has already granted plaintiff leave to amend and provided plaintiff
14 a statement of the Complaint's deficiencies.  Plaintiff failed to correct the
15 deficiencies previously identified.  In addition, plaintiff added new claims
16 exceeding the scope of the leave to amend, all of which have the same deficiencies
17 as the claims in the Complaint, are based on constitutional rights or other legal
18 provision inapplicable to the facts alleged, or are based on statutes that do not
19 provide a cause of action or remedy.  It is thus clear that further amendment would
20 be futile. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone
21 can justify the denial of a motion to amend.").

22     Accordingly, the court should dismiss the First Amended Complaint without
23 leave to amend.

24 *//*

25 *//*

26

27

28

# V.

## __RECOMMENDATION__

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Report and Recommendation; (2) granting the Motion to Dismiss (docket no. 27); and (3) directing that Judgment be entered dismissing the First Amended Complaint and this action without leave to amend.

DATED:  September 21, 2021

_____
SHERI PYM
United States Magistrate Judge

21